STATE OF MARYLAND *v.* ROGER
FRANKLIN BLAKNEY

[No. 68, September Term, 1969.]

*Decided December 2, 1969.*

Before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Francis B. Burch, Attorney General, Alfred J. O'Ferrall, III, Assistant Attorney General,* and *Charles E. Moylan, Jr., State's Attorney for Baltimore City,* for applicant.

*Robert W. Baker* for respondent.

MURPHY, C.J., delivered the opinion of the Court.

On June 19, 1969, the State of Maryland filed its application for leave to appeal from an order dated May 26, 1969 of Judge Joseph C. Howard in the Criminal Court of Baltimore, pursuant to which Roger Blakney, a lawfully committed inmate of Patuxent Institution, was granted "leave to work-out, live-in status" from the Institution.

The record discloses that Blakney was convicted of arson on April 11, 1961, sentenced to five years imprisonment, and thereafter referred to Patuxent Institution for evaluation to determine whether he was a defective delinquent within the meaning of Maryland Code, Article 31B, Section 5. He was subsequently adjudged a defective delinquent on March 17, 1962 at a court trial and committed to Patuxent Institution. The Court of Appeals denied Blakney's application for leave to appeal from that judgment. *Blakney v. Director,* 230 Md. 610.

Blakney was redetermined to be a defective delinquent on November 23, 1964 at a court trial and the Court of Appeals again denied his application for leave to appeal. *Blakney v. Director*, 239 Md. 704.

On May 23, 1969, Judge Howard redetermined that Blakney was a defective delinquent and recommitted him to the Institution. Three days later, on May 26, 1969, Judge Howard entered an order in the proceedings placing Blakney on "work-out, live-in status," the order also providing that it was "subject to the provisions and terms set forth by the Court, including all conditions imposed by the Director of Patuxent Institution and the Chairman of the Institutional Board of Review."

On June 12, 1969, the State entered its appeal to the Court of Appeals of Maryland from Judge Howard's order of May 26, 1969. It also moved for a stay of Judge Howard's order, alleging in its petition that it had appealed the decision on the ground that the court was without jurisdiction to enter its order; that Blakney was not "a suitable candidate for work-out, live-in status;" that Blakney was "an extremely emotional individual who is basically quite emotionally disturbed and extremely impulsive;" that Blakney was possessed of "little or no insight and when faced with the stress of a new learning situation, he will become extremely anxious and behave in a manner consistent with his established antisocial behavior pattern;" and that Blakney was "a danger to society and should not at this time be released to the social body." Judge Howard declined to grant the requested stay.

On June 19, 1969, the State applied to us for leave to appeal from Judge Howard's order of May 26, 1969. In its application, the State alleged that Judge Howard was without jurisdiction to enter the order in question. On June 26, 1969, we granted a stay of Judge Howard's order, pending determination of the merits of the case. See Maryland Code, Article 31B, Section 11.

Counsel was appointed to represent Blakney in the State's direct appeal to the Court of Appeals of Mary-

land. The case was fully briefed and argued before that Court on October 9, 1969. The issue raised in that case was the same as that now presented to us. By order dated December 2, 1969, the Court of Appeals dismissed the State's appeal on the ground that it had no jurisdiction to entertain it.

We have reviewed the briefs filed in the Court of Appeals by both parties and do not deem it necessary to hear further argument in the case before reaching a determination on the sole question presented by the State's application, *viz.*, whether the lower court had jurisdiction to enter the order of May 26, 1969, placing Blakney on "work-out, live-in status" against the advice and recommendation of the Institution's governing authorities. We note in this connection that the psychiatrist employed by Blakney for his defective delinquency redetermination hearing before Judge Howard agreed with the Institution's psychiatrists that Blakney was still a defective delinquent—a conclusion formerly shared by the two other psychiatrists previously engaged by Blakney in connection with his former defective delinquent hearings.

In passing the order of May 26, 1969, Judge Howard purported to act on authority vested in him by Section 13 (d) and (f) of Article 31B. Insofar as pertinent, those subsections, which are codified under the subheading "Institutional Board of Review," [1] provide:

"(d) Leave of absence or parole from Institution.—*If the institutional board of review as a result of its review and reexamination of any person believes that it may be for his benefit and for the benefit of society to grant him a*

---

1. The Board is composed of the Director and two Associate Directors of the Institution, each of whom is required to be a psychiatrist; another Associate Director of the Institution, who is not required to be a psychiatrist; the full-time professor of constitutional law at the University of Maryland; a member of the Maryland Bar; and a sociologist from the faculty of an accredited institution of higher education in Maryland. See Maryland Code, Article 31B, Section 12.

*leave of absence or parole from the institution for defective delinquents, it may proceed to arrange for such leave or parole.* Any leave of absence or parole shall be granted for a period not to exceed one year. The board shall review the case before the expiration of that time and may review it at any time during the year, in order to make further or alternate determination. The board may attach to any such leave of absence or parole such conditions as to it seem wise or necessary, including arrangements for the care and supervision of the person granted a leave or parole, by his friends or relatives, by the institution for defective delinquents or by the Department of Parole and Probation, and also including as a condition that the said person shall be steadily employed or otherwise occupied during the time of such leave or parole. The board may at any time revoke a leave or parole, or change the conditions and arrangements therefor. The board may also request the court which imposed upon the person the original sentence resulting in his being subsequently classified as a defective delinquent, to reinstate the said original sentence; and the said court is authorized and empowered following such a request to reinstate and reimpose the said original sentence, and to cause the said person to be held in custody therefor, as provided hereinbelow. (Emphasis supplied.)

\* \* \*

"(f) When court to release from custody of Institution or grant leave of absence or parole. —*If the institutional board of review as a result of its review and reexamination of any person believes that he has sufficiently improved to warrant his unconditional release from custody as a defective delinquent, it shall so inform whatever court has jurisdiction over*

*the person.* The court then shall make such further study of such person as seems necessary, and may at its discretion summon such person before it for a further hearing, together with any witnesses whose testimony may be pertinent and together with any relevant documents or other evidence. On the basis of such reports, study and possible hearing, the court shall determine whether the person before it shall be released unconditionally from custody as a defective delinquent, released conditionally on a leave of absence or parole, returned to the custody of the Institution as a defective delinquent, or returned to the Department of Correction, to serve the original sentence upon which he was committed prior to being classified as a defective delinquent. * * * *The power of the court to provide for a leave of absence or parole for any such person before it shall be the same as that of the institutional board of review, described hereinabove in this section, except that once the person has entered upon the leave of absence or parole, the board shall have the administration of the terms and conditions of the leave or parole as set by the court. * * **" (Emphasis supplied.)

In *Austin v. Director,* 245 Md. 206, 211, it was held that Article 31B — the Defective Delinquent Act—is a comprehensive statute which "sets forth the procedure to be followed in the conduct of a defective delinquency proceeding from its commencement to its conclusion." It was further noted in *Austin,* at page 209, that while courts which hear defective delinquent proceedings are courts of general jurisdiction, they become courts of special or limited jurisdiction whenever they proceed to determine, with or without the aid of a jury, the status of persons alleged to be defective delinquents; that in such cases "the courts instead of exercising their inher-

ent powers are limited to the power and authority conferred on them by the provisions of Article 31B;" and that "where a court of general jurisdiction undertakes to carry out a special power, a decision made in the exercise of such power is treated as a ruling of a court of limited jurisdiction and the presumption, applicable to a court of general jurisdiction, that it acted within the scope of its jurisdiction does not apply." In short then, the lesson of *Austin* is that where, as here, the lower court acted in the exercise of a special statutory power, its jurisdiction and authority to act is limited to that vested in it by the statute.

We think it entirely clear that neither Section 13(d) or (f) empowered Judge Howard to place Blakney on a "work-out, live-in status." Section 13(d) applies only if the institutional board of review determines that it may be for the benefit both of the inmate and of society to grant the inmate a leave of absence. In that event, the board, and *only* the board, is authorized "to arrange for such leave or parole." Section 13(f) is applicable only where the institutional board of review makes a finding that the inmate's condition is such as to warrant his unconditional release from custody as a defective delinquent. *If the board so decides,* the court is then empowered by the subsection to determine whether the inmate should be (a) released unconditionally, or (b) released conditionally on a leave of absence or parole, or (c) retained in custody as a defective delinquent, or (d) returned to the Department of Correction to serve his original sentence. Where, as here, the board not only made no recommendation that Blakney be unconditionally released, but expressed its opposition to any leave of absence whatsoever, and specifically to placing Blakney on "work-out, live-in" status, the court is wholly without jurisdiction to act under the statute.

The history and purposes of Maryland's Defective Delinquent Act are outlined at great length in *Director v. Daniels,* 243 Md. 16, and no further review thereof is

here necessary. We briefly note, however, that in *Daniels* it was recognized that it is both basic and fundamental to the conceptual thought underlying the enactment of the law and the creation of its psychiatrically-oriented operative facility—Patuxent Institution—that individuals classified as defective delinquents consitute a category of legally sane persons who, by reason of mental or emotional deficiencies, or both, evidence a propensity toward criminal activity which they are incapable of controlling; that such individuals should be dealt with in a manner other than as conventional criminals, *viz.*, they must be afforded psychiatric treatment in the place of penal incarceration; that the condition suffered by defective delinquents is exceedingly difficult to cure and will usually require confinement in the institution for an extended period in order effectively to complete the treatment process, it being understood that the defective delinquent is to be freed from confinement only after he has been sufficiently cured to make it reasonably safe to release him. The ultimate aim of the treatment program at Patuxent Institution is to develop internal controls within the individual in order that he may learn sufficient restraint to become a useful member of society— the treatment program is one specifically adapted to the mental and emotional condition of the inmates. We think it evident that the decision of the institutional board of review to place a committed inmate, who still retains his status as a defective delinquent, on "work-out, live-in status" is part of the Institution's treatment program and, as such, is a matter committed by the Legislature *solely* to the expert judgment of the members of the board.

> *Application for leave to appeal granted; case remanded for the entry of an order striking out and vacating the order of May 26, 1969.*