GEORGE JOSEPH LINCOLN *v.* DIRECTOR,
PATUXENT INSTITUTION

[App. No. 26, September Term, 1974.]

*Decided June 13, 1974.*

Before ORTH, C. J., and MORTON and GILBERT, JJ.

ORTH, C. J., delivered the opinion of the Court.

It appears from a petition seeking a redetermination of defective delinquency status filed on 24 October 1973 by GEORGE JOSEPH LINCOLN in the Circuit Court for Prince George's County that Lincoln was convicted in that

court of unnatural and perverted sexual practices and sentenced to 5 years on 21 May 1969. He was referred to Patuxent Institution for evaluation as a possible defective delinquent. Upon a finding in the Circuit Court for Prince George's County on 10 August 1970 that he was a defective delinquent, he was committed to Patuxent for an indeterminate term. He sought a redetermination of his status as a defective delinquent, and on 7 January 1974 was found by a jury to be a defective delinquent. The same day he was recommitted to Patuxent by order of Parker, J. He seeks leave to appeal from that order.[1]

Lincoln's reason why the order recommitting him to Patuxent should be reversed concerns Code, Art. 31B, § 7 (b). He asserts that the statute authorizes that he be examined by a psychiatrist of his own choosing. He claims that his counsel "was notified that funds for an independent psychiatric examination would not be available for an indigent", that his counsel "only became aware the day before the January 7, 1974 hearing that [he] had a statutory guaranteed right to be examined by an independent psychiatrist", that he moved for a continuance to obtain such an examination, and that the hearing judge denied the motion. He urges that this was error, pointing out that "there would have been no prejudicial delay had the trial judge granted a continuance in order for an independent evaluation to be completed . . . ."[2]

---

1. On 6 February 1974 Lincoln filed a "Line to Appeal" in which he gave "notice of his intention to appeal the findings on January 7, 1974, in the Circuit Court for Prince George's County, Maryland, with respect to his status of a defective delinquent." The correct procedure is set out in Code, Art. 31B, § 11 and Maryland Rule 1094. In any event, on 29 March 1974 an application for leave to appeal was filed in the court below, requesting that the court accept the notice of 6 February as an application for leave to appeal, and setting out the reasons why the order should be reversed or modified as required by Rule 1094 2 (a). The lower court so accepted it and so do we.

2. Lincoln avers that although "approximately 7 or 8 witnesses" were summoned to testify in his behalf, only one witness was summoned on behalf of the State, and "it would not have been inconvenient nor would it have prejudiced the case in any way for the continuance to be granted." The record shows requests by Lincoln to issue summonses for 6 witnesses and request by the State to summons only one, Dr. Boslow, the Director of Patuxent.

When the petition for redetermination came on for trial, Lincoln, out of the hearing of the jury, moved for a continuance. The transcript of the proceedings reads:

"MR. POWERS [Lincoln's Attorney]: Pursuant to Article 31B defendant at this time requests postponement in order to have an independent psychological or psychiatric evaluation of the defective delinquent. Defense counsel learned as late as a month ago that the Public Defender's Office would not pay for an independent evaluation, but according to the rules it seems that an independent evaluation should be granted. I believe that the State has an expert here today from the institution who will testify as to psychological and/or psychiatric status of this delinquent and defense counsel feels it is imperative that we have an opportunity, as provided by the statute under 31B, to have this man independently evaluated and those reports forwarded to the Court.

THE COURT: Why didn't you make application to the Court for appointment of a psychiatrist a month ago when you found out the Public Defender wouldn't bear the expense?

MR. POWERS: Your Honor, the Public Defender's Office notified me by phone. I was appointed; I am not on their staff. I am a private attorney and I was appointed to represent this man. I received appointment papers in the mail and made a phone call to Mr. Camus' office, whereupon I was advised that the Public Defender's Office does not provide money for it.

THE COURT: I say a month ago when you knew that, why didn't you file a petition in the case for appointment of a psychiatrist at that time?

MR. POWERS: Acting on the instructions of the Public Defender's Office I failed to file a petition.

THE COURT: The motion at this time is not timely so therefore it is denied. You can't come in the day

of trial and ask for the appointment of a psychiatrist.

MR. POWERS: Your Honor —

THE COURT: The jury is here and all the other witnesses for the State are here.

MR. POWERS: The State has made it known to the defendant and to defendant's counsel that there is no inconvenience to them and it would be approximately a thirty day delay. And I think, since the rules provide that he will not be eligible again for three years should a redetermination be a certainty here today that he is still a defective delinquent, I think that it would be imperative for his rights that he be independently examined and a thirty day postponement is not unreasonable.

THE COURT: I have ruled and we will let the record stand as it is.

MR. POWERS: Very well, Your Honor.

THE COURT: We have rules to go by here by way of making a motion for continuance. If they are timely made and within reason we grant them. We don't grant them on the date of trial."

Maryland Rule 527 a 1 authorizes the court, in its discretion, upon motion of any party, or upon its own motion, to "continue an action from time to time in order that a trial may be had upon the merits or as the interests of justice may require. . . ." See *Butkus v. McClendon,* 259 Md. 170. Court Rule 527 of the Seventh Judicial Circuit is more specific. Section b prescribes, as to civil trials:

"Upon receipt of notice of the trial date from the Assignment Clerk counsel must promptly communicate with the Assignment Clerk if there are any reasons, including, but not limited to, a conflict of dates with some other court proceeding, unavailability of witnesses, and pending discovery proceedings, for which such date is not acceptable. Failure to notify the Assignment Clerk will be

> construed as acquiescence in the date, which shall become absolutely binding after thirty days from the date of notice. Thereafter, no continuance will be granted unless the Court shall be satisfied that such an emergency has arisen, not reasonably foreseeable, as would result in an injustice if the trial is required to take place."

The initial question is whether the judge abused his discretion by denying a continuance.

The record affirmatively shows that Lincoln's counsel was notified of the hearing date in ample time to comply with Seventh Circuit Rule 527. On 29 October 1973 the court below issued an order that Lincoln be brought before it for a redetermination hearing as to his defective delinquency status and that his counsel "be notified of the hearing date at least thirty days in advance in order that the defendant may secure the attendance of witnesses on his behalf by process." Under date of 13 November 1973 counsel was notified by letter from the Assistant State's Attorney that the case was "set for jury trial on Monday, January 7, 1974 at 10:00 A.M." On 29 November 1973 counsel filed a line to issue summonses for six witnesses to appear on the date set.

Assuming arguendo that Lincoln was entitled to be examined by a psychiatrist of his own choice, it appears from the face of the record that there was ample time for counsel to so request the court and to have obtained a report before the date set for trial. Counsel's reasons to the court below why he had not done so alleged that he had learned "as late as a month ago" that the Public Defender's Office, by whom he was appointed to represent Lincoln, would not pay for an independent evaluation. Asked by the judge why he had not prayed the court to appoint a private psychiatrist, his answer was, "Acting on the instructions of the Public Defender's Office I failed to file a petition." We observe that he introduced no evidence whatsoever to support his claim, but, for the purpose of decision, we consider his statements a proffer of evidence, and accept, as apparently the court below did, that the Office of the Public

Defender told him that it would not pay a private psychiatrist to examine Lincoln. Accepting this, however, does not explain why counsel did not request the court to appoint a private psychiatrist. The substance of Code, Art. 31B, § 7 (b) has been in effect since 1951, see Acts 1951, ch. 476, § 7 (b), and, assuming for purpose of resolution of the matter of the continuance, that the statute is applicable in the circumstances, if counsel was not in fact aware of its provisions, he was certainly charged with knowledge of them. We conclude that, under the local rule of court, as no emergency had arisen which was not reasonably foreseeable, the court below did not abuse its discretion in failing to grant the continuance requested.

Our conclusion, however, that there was no abuse of judicial discretion in refusing to grant a continuance in the circumstances, does not end the matter. Lincoln obviously wanted to be examined by a psychiatrist of his choice. If he was legally entitled to such an examination, the failure of counsel to make timely request for it might well be prejudicial, and, thus, Lincoln would not have received genuine and effective assistance of counsel.[3] Our inquiry necessarily turns to whether Lincoln was entitled to be examined by a private psychiatrist.

A request that a person be examined for possible defective delinquency may be made upon conviction of that person of certain crimes. Code, Art. 31B, § 6 (a). The request may be made, not only by the State's Attorney prosecuting the person and by the court on its own initiative, but by the person himself or his attorney in his behalf. § 6 (b). The examination shall be made by at least three persons on

---

**3.** The psychiatrist of the criminal's own choice, furnished him as provided by Art. 31B, § 7 (b), is not in the position of a medical expert in an adversary proceeding. He is considered to be "independent", and is required to submit a written report of his examination and findings to the court for consideration by the trier of fact. "The defendant has no control over the admission of the report of this independent psychiatrist and the physician-patient relationship does not apply." *Savage v. Director,* 5 Md. App. 1, 2-3, quoting *Sas v. Maryland,* 334 F. 2d 506, 511, citing *Simmons v. Director,* 227 Md. 661. The defendant has no right under the statute to withhold the psychiatrist's report from the court or to exclude it from evidence at the hearing, even when unfavorable to him. *McCubbin v. Director,* 17 Md. App. 351, 354.

behalf of Patuxent Institution, as spelled out by § 7 (a). See *Fox v. Director*, 6 Md. App. 475. Section 7 (b) provides for an additional psychiatric examination. It reads:

"In addition to the examination provided in the foregoing subparagraph (a), whenever a request has been made to examine any person for defective delinquency, other than a request made by such person himself or by his attorney on his behalf, and whenever the court has on its own initiative ordered examination of any person, then such person shall be entitled, upon request, to be examined by a practitioner of psychiatry of his own choice for the purpose of determining whether he is a defective delinquent within the terms of this article; and the reasonable costs of such examination shall be defrayed by the State of Maryland from the appropriations to the judiciary, in such amount as may be approved by the court. The report of examination made by such psychiatrist shall be submitted in writing addressed to the court." [4]

By the express terms of subsection (b), the person is not entitled to be examined by a private psychiatrist of his own choice when he, himself or through his attorney, has asked

---

[4]. In *Brown v. Director*, 224 Md. 635, the lower court held, in a post conviction proceeding, that under § 7 b the person subject to defective delinquent proceedings was not entitled to have the trial court appoint a psychiatrist for him. Its view was that the court's only obligation was to order payment out of State funds of the fee of a psychiatrist of the person's own choice in an amount deemed reasonable by the court. The Court of Appeals found it unnecessary to pass upon the correctness of this construction of the statute because the issue had been waived by acquiescence and by failure to appeal.

Subsequent opinions of the Court do not expressly resolve the question. But the Court speaks in terms of the "right to independent psychiatric examination" in finding that such "right" was waived. *Murray v. Director*, 228 Md. 658; *Harmon v. Director*, 233 Md. 595; *Davis v. Director*, 243 Md. 734. See *Sas v. Maryland, supra*, 511 in which the United States Court of Appeals for the Fourth Circuit referred to "the psychiatrist of the criminal's own choice, which must be furnished him by the state upon request. . . ." We think it the better practice for the hearing court to appoint the requested private psychiatrist when that psychiatrist is qualified and willing to make the examination.

for the examination prescribed by subsection 7 (a). See *Director v. Daniels*, 243 Md. 16, 43. This is the clear legislative mandate.

Art. 31B, § 6 — "Requests for examination", § 7 — "Examinations", § 8 — "Hearings", § 9 — "Sentence", providing for the disposition of a person when found not to be a defective delinquent, subsection (a), and when found to be a defective delinquent, subsection (b), are primarily concerned with procedures, duties, and rights upon an initial determination of defective delinquency *vel non*. It is § 10 — "Petition for Review", which deals with the redetermination of the status of a person who had been committed to Patuxent as a defective delinquent. See *State v. Reichman*, 16 Md. App. 581. We have expressed the view, however, in *McCubbin v. Director, supra*, at 353-354, that as both original and redetermination proceedings share the same goal of ascertaining whether the subject of the proceeding is a defective delinquent as defined in § 5 of Art. 31B, the general rule is that all of the procedures applicable to original determination hearings are applicable to redetermination hearings.[5] We held, *id.*, at 354, that § 7 (b) is applicable in redetermination hearings. In the factual posture of *McCubbin* there was no need for us to consider, with respect to redetermination hearings, the proviso that a person is not entitled to be examined by a practitioner of psychiatry of his own choice if he or his attorneys in his behalf makes the request for examination for defective delinquency.[6]

The proviso was added to the statute by Acts 1961, ch. 629,

---

5. Except when a specific alternative is expressly provided in § 10. *McCubbin v. Director, supra*, at 353. See *Silvestri v. Director*, 8 Md. App. 401.

6. *McCubbin* involved redetermination proceedings. The report of the private psychiatrist who made the examination at the defective delinquent's request was admitted in evidence over the objection of the subject. The defective delinquent, unhappy with the opinion of the psychiatrist of his choice, argued that § 7 (b) did not apply to redetermination hearings.

§ 7 (b).[7] Although it is patent that the rights of the subject of a defective delinquency hearing under Art. 31B, § 7 (b) cannot be greater with respect to a redetermination of defective delinquency than with respect to an initial determination, we cannot equate the request of a person already adjudged to be a defective delinquent to be brought before the court for the purpose of having his status redetermined under § 10 with a request by a person not so adjudged to be examined and evaluated to ascertain if he is possibly a defective delinquent under § 7 (a). In the latter instance the person is affirmatively seeking the treatment and care afforded by Patuxent. In the former, as in all other requests that a person be examined to determine defective delinquency other than a request made by such person or his attorney on his behalf, such person is endeavoring to avoid commitment to Patuxent or to secure his release therefrom after commitment. We think it the clear legislative intent that when a person is resisting commitment as a defective delinquent, that he be entitled to an evaluation by a psychiatrist of his choice in addition to the evaluation by the Patuxent staff. The short of it is that Lincoln was entitled, at his request, to be examined at State expense by a practitioner of psychiatry of his own choice, and the right was denied him.

We grant the application for leave to appeal and remand the case to the hearing court. We do so without reversing or affirming the order of 7 January 1974. Rule 1071. Upon remand, the hearing court shall honor a request by Lincoln to be examined by a practitioner of psychiatry of Lincoln's choice for the purpose of determining whether he is a defective delinquent within the terms of Article 31 B and the reasonable costs of such examination shall be defrayed by the State of Maryland from the appropriations to the judiciary, in such amount as may be approved by the court, pursuant to Art. 31B, § 7 (b). If it is the opinion of the psychiatrist chosen by Lincoln that Lincoln is still a

---

7. Prior thereto the statute read, *inter alia,* "whenever a request has been made to examine any person for defective delinquency, by the State's attorney or assistant State's attorney, or by the court on its own initiative, then such person shall be entitled, upon request . . . ."

defective delinquent, the order of 7 January 1974 will stand affirmed, for the reasons that the error at the redetermination hearing in denying examination by a private psychiatrist would be harmless, such opinion merely corroborating the conclusion of the Patuxent staff. See note 3, *supra.* On the other hand, if it is the opinion of such psychiatrist that Lincoln is not now a defective delinquent, the order will be vacated and a new hearing granted, for Lincoln then would be entitled to have the trier of fact consider the expert's opinion that he is not a defective delinquent as evidence tending to refute the opinion of the Patuxent staff that he is a defective delinquent.[8]

> *Application granted; case remanded for further proceedings in accordance with this opinion; mandate to issue forthwith.*

---

8. We find support in *United States v. Taylor,* 437 F. 2d 371, 379 (4th cir. 1971) for the procedural action here taken. In *Taylor* the United States Court of Appeals for the Fourth Circuit remanded with comparable directions for an examination by a private psychiatrist with respect to an insanity defense.