JOSEPH KISSELOVICH *v.* DIRECTOR,
PATUXENT INSTITUTION

[No. 863, September Term, 1975.]

*Decided April 15, 1976.*

The cause was argued before ORTH, C. J., and LOWE and MELVIN, JJ.

*Leonard C. Redmond, III, Assistant Public Defender*, with whom was *Alan H. Murrell, Public Defender* on the brief, for appellant.

*Donald R. Stutman, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General, Ralph M. Burnett, State's Attorney for Garrett County* and *James L. Sherbin, Assistant State's Attorney for Garrett County* on the brief, for appellee.

ORTH, C. J., delivered the opinion of the Court.

## REMOVAL IN DEFECTIVE DELINQUENT PROCEEDINGS

### (1)

The defective delinquents law was enacted by ch. 476, Acts 1951, to take effect on 1 July 1952.[1] It created an institution for defective delinquents known as the Patuxent Institution, now a part of the Department of Public Safety and Correctional Services. Code, Art. 27, § 1. The General Assembly was concerned about those persons who had been convicted and sentenced in a court of this State for certain serious crimes, and who, although responsible for their criminal conduct, had evidenced a propensity toward criminal activity demonstrated by persistent aggravated antisocial or criminal behavior and had either such intellectual deficiency or emotional imbalance, or both, as to demonstrate clearly an actual danger to society so as to require confinement and treatment apart from the incarceration for the conviction of the substantive offenses.

---

1. For a history of the defective delinquents statute see *Director v. Daniels*, 243 Md. 16, 30-33 (1966).

A person found to be a defective delinquent shall be confined at Patuxent until it is reasonably safe for society that he be released. Thus, his commitment to Patuxent is for an indeterminate period without either maximum or minimum limits. Code, Art. 31B, §§ 5, 6 and 9.

The defective delinquents statute is carefully structured to provide protections, both substantive and procedural, for the accused. The protections encompass the entire proceedings, starting with the request for examination as to possible defective delinquency — § 6, and extending through examinations — § 7, hearings — § 8, review — § 10, and appeal — § 11. One of the most important safeguards is that the ultimate determination of defective delinquency *vel non* shall be by a judicial proceeding.[2] The trial on the issue of defective delinquency shall be in the court having custody of or jurisdiction over a person alleged to be a defective delinquent. In a county that court is the circuit court, and in Baltimore City it is the Criminal Court of Baltimore.[3]

The circuit courts of Maryland are courts of general jurisdiction. Courts Art. § 1-501. Defective delinquent proceedings are civil in nature. *Austin v. Director*, 245 Md. 206, 211 (1967); *Mastromarino v. Director*, 244 Md. 645, 649 (1966); *Director v. Daniels, supra*, at 32; *Blizzard v. State*, 218 Md. 384, 386-390 (1958). But, although ". . . the courts which hear defective delinquency proceedings are courts of general jurisdiction, they become courts of special or limited jurisdiction whenever they proceed to determine (with or without the aid of a jury) the status of persons alleged to be

---

2. Code, Art. 31B, § 8 (c) provides for a jury trial upon application of the State or the person or upon the court's own motion. "In the absence of request for finding by a jury, the court may make such determination sitting as judge and jury."

3. "A conviction and sentence in the District Court of one of the offenses enumerated in § 6 of this article [31B, subjecting a person to examination for possible defective delinquency] is a conviction and sentence in a court of this State for the purposes of this article. However, jurisdiction to determine whether or not a defendant is a defective delinquent is in the circuit court of the county or the Criminal Court of Baltimore, with respect to a defendant convicted and sentenced by the District Court sitting in a county or in Baltimore City, respectively." Code, Art. 31B, § 15.

As used in this opinion hereafter with respect to defective delinquency proceedings, "circuit court" includes the Criminal Court of Baltimore.

defective delinquents. In such cases, the courts instead of exercising their inherent powers are limited to the power and authority conferred on them by the provisions of Article 31B. A court can be a court of general jurisdiction for some purposes and a court of limited jurisdiction for other purposes. When therefore a court of general jurisdiction proceeds under a special statute it becomes a court of limited jurisdiction for the purpose of such proceeding. * * * Accordingly, where a court of general jurisdiction undertakes to carry out a special power, a decision made in the exercise of such power is treated as a ruling of a court of limited jurisdiction and the presumption, applicable to a court of general jurisdiction, that it acted within the scope of its jurisdiction does not apply." *Austin*, at 209. That a circuit court is a court of limited jurisdiction when conducting defective delinquent proceedings was recognized and applied by the Court of Appeals in *Austin* in holding that the hearing court could not grant a new trial, and in *Bullock v. State*, 230 Md. 280, 286 (1962) in holding that it could not grant a removal for trial. This court, on the same rationale, has held that the circuit court could not order an interim redetermination of defective delinquency, *State v. Reichman*, 16 Md. App. 581, 585-586 (1973) or place a defective delinquent under a work release program, *State v. Blackney*, 8 Md. App. 232, 238 (1969). See *Wilson v. State*, 30 Md. App. 225 (1976).

## (2)

On 6 March 1974 Joseph Kisselovich appeared in the Circuit Court for Garrett County and pleaded guilty to charges of storehouse breaking and grand larceny. The pleas were accepted and verdicts entered accordingly. On 15 March he was sentenced to imprisonment for a period of 10 years on each conviction, the sentences to run concurrently. The court ordered that he be transferred to Patuxent for examination as a possible defective delinquent. Under date of 3 July the Director of Patuxent reported that it was the opinion of the staff that Kisselovich was a defective delinquent. Hearing to determine his status as required by

law was set. On 3 December 1974 Kisselovich filed a "Suggestion for Removal", "in accordance with Maryland Rules 738 and 542", alleging that he "does not feel that he will be able to receive a fair and impartial hearing in Garrett County, because his extensive prior criminal behavior will have an undue influence on the local passion, prejudice, or interest of a jury selected from Garrett County." The same day the court issued an order removing the case to the Circuit Court for Allegany County for trial. On 18 June 1975 the Circuit Court for Allegany County sent the case back to the Circuit Court for Garrett County. It ordered that the order of 3 December 1974 "granting a removal of this case, is hereby revoked" and that "this case be returned to the Circuit Court for Garrett County, Maryland, for further proceedings." The order returning the case gave as reason that the "said removal was granted without a hearing under the mistaken belief that the Defendant had an absolute right of removal. . . ."

Trial on the matter of the defective delinquency of Kisselovich proceeded in the Circuit Court for Garrett County before a jury on 8 September 1975 over objection to the return of the case from Allegany County. The jury found that he was a defective delinquent, and he was committed to Patuxent the same day. He applied for leave to appeal from the order. We granted the application on 14 October 1975, and ordered that the case be transferred to the regular appeal docket. Rule 1094 § c.

### (3)

One of the contentions that Kisselovich presents is: "The trial court's denial of removal of the case to another court of competent jurisdiction deprived [him] of due process of law and equal protection of the law." He appreciates that *Bullock v. State, supra,* held that there was no right to removal in a defective delinquent proceeding, but he asks us to look at the matter in the light of *Davidson v. Miller,* 276 Md. 54, decided 18 September 1975. The Court held in *Davidson,* at 82, that "the portion of Article IV, section 8, which reads 'and in all suits or actions at law, issues from the orphans court, or

from any court sitting in equity' and the other language relating to this . . . [as well as the language in Rule 542 relating thereto] is unenforceable so long as the present multiple civil common law court system exists in Baltimore City." We said in *Firstman v. Atlantic Construction and Supply Company,* 28 Md. App. 285, 290-291 (1975): "The effect of the holding was, in the words of Chief Judge Murphy in his dissent, 'to excise all those provisions from § 8 of Art. IV of the Constitution of Maryland which afford litigants in civil law cases an automatic right of removal to another court upon mere suggestion in writing, under oath, that a fair and impartial trial cannot otherwise be obtained. . . .'" *Davidson* hastened to point out, however, at 83: "The effect of this ruling . . . will in no way deprive or otherwise curtail the circuit courts of the counties or the circuit-level civil law courts of Baltimore City from exercising their common law discretionary power (which is subject to appellate review for abuse) to remove an action to another jurisdiction, within or without the circuit, in order to rid the case of any prejudicial barnacles which, because of local prejudice, passion or interest, may have attached; thus, as near as is reasonably possible, an action's consideration by a fair and impartial jury can be insured." Kisselovich argues, therefore, that *Bullock* is not dispositive. It teaches only that no right of removal was given by the defective delinquent statute: "The statute not only affords no right of removal, but, on the contrary, clearly negates any inference that a removal was ever contemplated." 230 Md. at 286. The rationale was that "[a]lthough the Legislature lacks authority to enact a law restricting or limiting the right of removal, it nevertheless has the power to extend the right by legislative enactment . . . so long as the enactment does not conflict with the Constitution." *Id.,* at 285. The Legislature had simply not extended the right of removal to defective delinquent proceedings. *Bullock,* Kisselovich maintains, does not speak to the common law right of removal indicated by *Davidson.*[4] He urges that the common law right should

---

4. In Cooke v. Cooke, 41 Md. 362, 367 (1875) the Court of Appeals said: "The power of the courts to remove a cause to an adjoining county for trial,

apply. The contention is simply resolved. The inherent power under the common law to remove an action, which *Davidson* suggests vests in a circuit court in the exercise of its general jurisdiction, does not extend to such court, as we have indicated, in the exercise of the special or limited jurisdiction it enjoys in defective delinquent proceedings. In such proceedings the court has only those powers given by the statute conferring the special or limited jurisdiction. Art. 31B does not give the court the power to remove a defective delinquent proceeding. This affronts neither due process nor equal protection of the law. Defective delinquents comprise a class separate and distinct from the usual civil litigant and the usual criminal defendant. See *Davis v. Director,* 29 Md. App. 705, 713-717, 351 A. 2d 905, 910-912 (1976). The Circuit Court for Garrett County was wrong in removing the case on 3 December 1974 to the Circuit Court for Allegany County and right in refusing to remove it again after it was returned. The Circuit Court for Allegany County was right in returning the case on 18 June 1975 to the Circuit Court for Garrett County.

## EXAMINATION BY A PRIVATE PSYCHIATRIST

### (1)

Code, Art. 31B, § 7 (b) provides for an examination for possible defective delinquency by other than the Patuxent Staff:

"[W]henever a request has been made to examine any person for defective delinquency, other than a request made by such person himself or by his

when justice required it, existed at common law as an acknowledged, if not an essential part of their ordinary common law jurisdiction." Yet in Knee v. Balto. City Passenger Ry., 87 Md. 623, 632 (1898) the Court observed that "the right of removal was not a common law right. . . ."

Courts in other jurisdictions are not in complete agreement. Compare: Crocker v. Justices of Sup. Ct., 94 N. E. 369, 371-373 (Mass. 1911), Earl of Kildare v. Eustace, 1 Vern. 437, 439 (1686), citing Sir Wm. Tyrringham's Case and 5 W. S. Holdsworth A History of English Law at 301, n. 11 and n. 12 (2d ed. 1945) (the right of removal existed at common law) to Pierce v. Crisp, 102 S.W.2d 386, 387 (Ky. 1937) and Buchanan v. Crow, 241 S. W. 563, 565 (Tex. 1922) (the right of removal did not exist at common law).

300

attorney on his behalf, and whenever the court has
on its own initiative ordered examination of any
person, then such person shall be entitled, upon
request, to be examined by a practitioner of
psychiatry of his own choice for the purpose of
determining whether he is a defective delinquent
within the terms of this article; and the reasonable
costs of such examination shall be defrayed by the
State of Maryland from the appropriations to the
judiciary, in such amount as may be approved by
the court. The report of examination made by such
psychiatrist shall be submitted in writing ad-
dressed to the court."

On 9 June 1975 Kisselovich filed a motion requesting an
order that Dr. Louis E. Kopolow examine him as the psychia-
trist of his choice pursuant to § 7 (b). The case was then
in Allegany County and the motion was filed in the Circuit
Court for that county. The same date that court ordered that
Dr. Kopolow examine Kisselovich "to determine whether or
not he is a defective delinquent" and that "expenses and
costs of said examination be defrayed by the State of
Maryland, said costs not to exceed $150.00 for the
examination, $35.00 per hour to testify, and $25.00 per hour
travel time."

There is in the record before us a letter from the court
reporter which states that due to a malfunction of the
recording machine only about 50% of the testimony and
proceedings at the defective delinquency trial could be
transcribed. Upon motion made we ordered that a
stipulation in lieu of testimony be made a part of the record.
According to the stipulation, which was certified by the trial
court and signed by counsel for the appellant and the
appellee, Kisselovich had some time before requested Dr.
Kopolow to examine him and Dr. Kopolow had done so,
sending to Kisselovich's attorney a report that Kisselovich
was not a defective delinquent. The stipulation continues:

"At trial [Kisselovich] profferred the report of
Dr. Louis Kopolow. Before the report of Dr.

Kopolow could be read into the record, a specific objection was made by the State on the ground that the State was not aware of Dr. Kopolow's psychiatric examination of [Kisselovich] and had not previously read Dr. Kopolow's report. After consultation with counsel, Judge Naughton ruled that the report could not be introduced into evidence on the ground that the examination was conducted prior to the court signing an order appointing Dr. Kopolow as an independent psychiatrist. [Kisselovich] excepted to this ruling."

(2)

Kisselovich contends that the trial court committed reversible error by refusing to admit the report in evidence. We discussed the provisions of Art. 31B, § 7 (b) in *Lincoln v. Director*, 21 Md. App. 597 (1974). We noted, at 602, n. 3:

"The psychiatrist of the criminal's own choice, furnished him as provided by Art. 31B, § 7 (b), is not in the position of a medical expert in an adversary proceeding. He is considered to be 'independent', and is required to submit a written report of his examination and findings to the court for consideration by the trier of fact. 'The defendant has no control over the admission of the report of this independent psychiatrist and the physician-patient relationship does not apply.' *Savage v. Director*, 5 Md. App. 1, 2-3, quoting *Sas v. Maryland*, 334 F. 2d 506, 511, citing *Simmons v. Director*, 227 Md. 661. The defendant has no right under the statute to withhold the psychiatrist's report from the court or to exclude it from evidence at the hearing, even when unfavorable to him. *McCubbin v. Director*, 17 Md. App. 351, 354."

We found in *Lincoln*, at 605, that Lincoln was entitled, at his request, to be examined at State expense by a practitioner of psychiatry of his own choice, and that the right was denied him. We remanded so that such examination could be made,

observing, at 606: "[I]f it is the opinion of such psychiatrist that Lincoln is not now a defective delinquent, . . . Lincoln then would be entitled to have the trier of fact consider the expert's opinion that he is not a defective delinquent as evidence tending to refute the opinion of the Patuxent staff that he is a defective delinquent."

We believe that Kisselovich was entitled to have the jury consider the report of Dr. Kopolow. It is correct that the examination was made before the order was issued authorizing it and that the report of that examination was not promptly filed in court. But, in the circumstances, we believe that the order of 9 June 1975 was sufficient authorization for the examination. If the State was in fact not aware of the report, it could have requested a reasonable continuance when the report was offered in order to become familiar with it, and, if it deemed it necessary, secured the attendance of Dr. Kopolow to testify. We find that the challenged report should have been admitted in evidence. The age of the report would go to the weight to be given it by the trier of fact. We hold that the refusal to admit the report was error, and, in the light of Dr. Kopolow's opinion stated therein, the error requires reversal of the judgment.

## THE TEST FOR THE SUFFICIENCY OF THE EVIDENCE

Kisselovich lastly claims that the trial judge erred by refusing to instruct the jury that the State must prove that he is a defective delinquent by clear and convincing evidence. *Davis v. Director, supra,* is dispositive of the point. We held in that case that the firmly established law of Maryland that the sufficiency of the evidence in a defective delinquency proceeding is to be tested by the preponderance of the evidence standard was constitutionally valid and would be followed.

*Judgment reversed; case remanded for a new hearing.*